KAQANIFPps

1 UNITED STATES DISTRICT COURT
 SOUTHERN DISTRICT OF NEW YORK
2 ------------------------------x

3 UNITED STATES OF AMERICA,

4    v.       18-cr-678-4 (JPO)

5 NIKOLAI NIFTALIJEV,

6     Defendant.   Plea

7 ------------------------------x

8          New York, N.Y.
           **(via telephone)**
9
          October 26, 2020
10         9:35 a.m.

11

 Before:
12

       HON. J. PAUL OETKEN
13

          District Judge
14

15       APPEARANCES

16 AUDREY STRAUSS
   Acting United States Attorney for the
17   Southern District of New York
 BY: GEORGE D. TURNER
18   Assistant United States Attorney

19 BENNETT M. EPSTEIN
   Attorneys for Defendant
20

21 Also Present: Yana Agoureev
       Russian Interpreter
22

23

24

25

1          (Via telephone)

2          (Case called)

3          THE CLERK:  Starting with the government, counsel,

4   please state your name for the record.

5          MR. TURNER:  Good morning, your Honor.  George Turner

6   for the government.

7          THE COURT:  Good morning.

8          MR. EPSTEIN:  Good morning, your Honor.  Bennett

9   Epstein for Mr. Niftalijev.

10          THE COURT:  Good morning.

11          And let me just ask if the interpreter can hear me and

12   if Mr. Niftalijev can hear me.

13          THE INTERPRETER:  The interpreter can hear you, sir.

14          And Mr. Niftalijev can hear you as well.

15          THE COURT:  Thank you.

16          THE INTERPRETER:  Mr. Niftalijev can only hear the

17   interpretation, not you directly, just through the interpreter.

18          THE COURT:  OK.

19          THE INTERPRETER:  But he cannot see.  He can just

20   hear.

21          THE COURT:  Yes.  We're doing this by audio only.

22          THE INTERPRETER:  Yes.  I understand.  Thank you.

23          THE COURT:  Thank you.

24          Mr. Epstein, I've been informed that your client is

25   prepared to change his plea to a plea of guilty pursuant to a

1 plea agreement.  Is that correct?

2     MR. EPSTEIN:  Yes, your Honor, that's correct.

3     THE COURT:  All right.  We're conducting this

4 proceeding by telephone conference, and that's authorized under

5 the CARES Act in light of the pandemic and by Chief Judge

6 McMahon's standing order and finding that plea proceedings

7 cannot be conducted in person without jeopardizing public

8 health and safety, as long as the defendant consents.

9     Mr. Epstein, have you had a chance to discuss

10 proceeding remotely by telephone with the defendant?

11     MR. EPSTEIN:  I have, your Honor, and he fully

12 consents, and we have filed with Mr. Hampton a consent form

13 that I have his authorization to sign.

14     THE COURT:  Thank you.  I did receive the consent

15 form.  And just to confirm, Mr. Niftalijev, you have the right

16 to have this proceeding take place in person, but given the

17 pandemic, in order for it to happen as soon as possible, you

18 have the right to do this by telephone.  Do you consent to

19 proceeding today by telephone?

20     THE DEFENDANT:  Yes.  I give my consent.

21     THE COURT:  Thank you.  I find the defendant has

22 consulted with counsel and has waived his right to an in-person

23 proceeding for this change of plea hearing today.

24     I also find that the proceeding cannot be further

25 delayed without seriously harming the interests of justice.

KAQANIFPps

1    Because the defendant has been detained for a significant

2    period of time, he appears to qualify for the safety valve

3    provision.  His co-defendants have been sentenced to 33 months.

4    His counsel will likely be arguing for a sentence below the

5    otherwise applicable mandatory minimum.  And the interests of

6    justice demand that he be allowed to set a sentencing date that

7    does not require a greater period of incarceration than

8    necessary.

9            Is there anything the parties would like to add on

10   that, Mr. Epstein?

11           MR. EPSTEIN:  No, your Honor.  You've summarized it.

12   Thank you.

13           THE COURT:  And Mr. Turner?

14           MR. TURNER:  No, your Honor.  We agree that going

15   forward telephonically is appropriate.

16           THE COURT:  Thank you.

17           Mr. Niftalijev, I've been informed that you wish to

18   plead guilty to Count One of the indictment.  Is that correct?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Before accepting your guilty plea, I'm

21   going to ask you certain questions to establish that you're

22   pleading guilty because you actually are guilty and not for

23   some other reason.  If you do not understand any of my

24   questions or if you'd like a further opportunity to speak with

25   Mr. Epstein, please let me know.

1          I am now going to swear you in.

2          (Defendant sworn)

3          THE COURT:  You are now under oath, and that means if

4     you answer any of my questions falsely, your answers could be

5     used in a prosecution for perjury.  Do you understand?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  Could you please tell me your

8     full name, sir.

9          THE DEFENDANT:  Nikolai Niftalijev.

10          THE COURT:  How old are you?

11          THE DEFENDANT:  33.

12          THE COURT:  How far did you go in school?

13          THE DEFENDANT:  I graduated from a vocational training

14     college.

15          THE COURT:  And where was that?  In Estonia or

16     somewhere else?

17          THE DEFENDANT:  It was in Estonia.

18          THE COURT:  Have you ever been treated or hospitalized

19     for any mental illness?

20          THE DEFENDANT:  No.

21          THE COURT:  Are you now or have you recently been

22     under the care of a psychiatrist or a doctor?

23          THE DEFENDANT:  No.

24          THE COURT:  Have you ever been treated or hospitalized

25     for addiction to drugs or alcohol?

1          THE DEFENDANT:  I didn't understand the question.

2          THE COURT:  Have you ever been treated or hospitalized

3     for addiction to drugs or alcohol?

4          THE DEFENDANT:  No.

5          THE COURT:  And in the past 24 hours, have you taken

6     any drugs or medicine or had any alcohol?

7          THE DEFENDANT:  No.

8          THE COURT:  And do you understand what's happening in

9     this proceeding today?

10          THE DEFENDANT:  Yes, I do understand.

11          THE COURT:  All right.  I'm going to ask counsel for

12     both sides if you have any doubt as to the defendant's

13     competence to plead.  Mr. Epstein?

14          MR. EPSTEIN:  I have none whatsoever, your Honor.

15     Thank you.

16          THE COURT:  And Mr. Turner?

17          MR. TURNER:  No, your Honor.

18          THE COURT:  Based on his responses to my questions and

19     his demeanor as I perceive it from his responses, I find that

20     the defendant is competent to enter a plea of guilty at this

21     time.

22          Mr. Niftalijev, have you had a sufficient opportunity

23     to discuss your case with your attorney, including the charge

24     you intend to plead guilty to, any possible defenses, and the

25     consequences of pleading guilty?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And are you satisfied with your attorney's

3  representation of you?

4          THE DEFENDANT:  Yes.

5          THE COURT:  I am now going to explain certain

6  constitutional rights that you have.  You give up these rights

7  when you plead guilty.  I want to make sure you understand

8  them.  Under the Constitution and laws of the United States,

9  you have the right to a speedy and public trial by a jury on

10  the charges in the indictment.  Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  At that trial, you would be presumed

13  innocent and the government would be required to prove you

14  guilty beyond a reasonable doubt by competent evidence before

15  you could be found guilty.  You would not have to prove that

16  you were innocent.  A jury of 12 people would have to agree

17  unanimously that you were guilty.  Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  At that trial and every stage of your

20  case, you would be entitled to be represented by an attorney.

21  If you could not afford one, an attorney would be appointed to

22  represent you.  Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  During a trial, the witnesses for the

25  government would have to come to court and testify in your

1    presence, and your lawyer would be able to cross-examine the

2    witnesses for the government, object to evidence offered by the

3    government, and if you desired issue subpoenas, offer evidence,

4    and compel witnesses to testify on your behalf.  Do you

5    understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  At a trial, although you would have the

8    right to testify if you chose to, you would also have the right

9    not to testify, and no inference or suggestion of guilt could

10   be drawn from the fact that you did not testify if that's what

11   you chose.  Do you understand?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Also, if you were convicted at a trial,

14   you would have the right to appeal that verdict to the Court of

15   Appeals.  Do you understand?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Even at this time, as you're entering this

18   plea, you do have the right to change your mind and plead not

19   guilty and have a trial on these charges.  Do you understand

20   that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  If you do plead guilty and I accept your

23   plea, you will be giving up your right to a trial and the other

24   rights I have just described.  There will be no trial.  But I

25   will enter a judgment of guilty and then sentence you later on

1  the basis of that guilty plea.  I will not sentence you today

2  but will sentence you after considering a presentence report

3  that will be prepared by the Probation Department as well as

4  any written submissions by your lawyer and the government

5  before I decide on an appropriate sentence.  Do you understand

6  that?

7           THE DEFENDANT:  Yes.

8           THE COURT:  And if you plead guilty, you will have to

9  give up your right not to incriminate yourself because I will

10  ask you questions about what you did to satisfy myself that you

11  are in fact guilty of this charge.  Do you understand?

12           THE DEFENDANT:  Yes.

13           THE COURT:  All right.  Count One of the indictment to

14  which you are pleading guilty charges you with participating in

15  a conspiracy to import into the United States and to distribute

16  with the intent to import into the United States 400 grams and

17  more of fentanyl and 100 grams and more of carfentanyl, a

18  fentanyl analogue, in 2017 and 2018.

19           I'd like to ask Mr. Turner if you would please state

20  the elements of the offense.

21           MR. TURNER:  Yes, Judge.  The charge in Count One, the

22  narcotics importation conspiracy charge, has three elements:

23  first, that there existed a conspiracy or an unlawful agreement

24  to violate the narcotics laws of the United States.  In this

25  case, the conspiracy was to import a controlled substance into

1    the United States or to manufacture, possess with intent to

2    distribute, or distribute a controlled substance intending,

3    knowing, or having reasonable cause to believe that it would be

4    illegally imported into the United States.

5            The second element is that the defendant knowingly and

6    intentionally joined in that conspiracy.  And, third, that the

7    conspiracy involved 100 grams of mixtures and substances

8    containing a detectable amount of carfentanyl, or 400 grams or

9    more of mixtures and substances containing a detectable amount

10   of fentanyl.

11           And, last, the government would need to establish by a

12   preponderance of the evidence that venue is appropriate in the

13   Southern District.

14           THE COURT:  Thank you.  I also want to explain the

15   maximum penalty for this crime.  There's a maximum of life

16   imprisonment, with a mandatory minimum of ten years'

17   imprisonment, unless I find that the safety valve provision

18   applies, which I will explain in a minute.  There's a maximum

19   fine of the greatest of $10 million or two times the total

20   financial gain from the offense or two times the total loss to

21   others from the offense, and a $100 special assessment, which

22   is mandatory.  And there is a term of supervised release for up

23   to life with a mandatory minimum of at least five years'

24   supervised release.  And "supervised release," when I say that

25   term, that means that you are subject to monitoring following

1   release from imprisonment.  And during that period, there are

2   terms and conditions of supervised release that you must comply

3   with.  And if you fail to comply with them, you can be returned

4   to prison without a jury trial.

5           In addition, as part of your plea agreement, you must

6   admit to the forfeiture allegation as to Count One of the

7   indictment and agree to forfeit to the United States government

8   any property derived from proceeds from this offense or used to

9   facilitate this offense, as explained in detail in the plea

10  agreement.

11          Mr. Niftalijev, you are not a United States citizen.

12  Is that correct?

13          THE DEFENDANT:  I am not a citizen.

14          THE COURT:  Are you an Estonian citizen?

15          THE DEFENDANT:  No, I'm not an Estonian citizen.

16          THE COURT:  Are you a citizen of any other -- of any

17  country?

18          THE DEFENDANT:  Well, this is the paradox that I'm

19  living in.  I have residency status in Estonia, but I do not

20  have citizenship.

21          THE COURT:  OK.  In any event, pleading guilty to this

22  crime will make it very likely, essentially mandatory, that you

23  are deported from the United States.  Do you understand that?

24          THE DEFENDANT:  Yes, I do.

25          THE COURT:  All right.  A minute ago I mentioned a

1   safety valve provision, and that's a provision in the law that

2   says when there's otherwise a mandatory minimum, like a

3   ten-year mandatory term of imprisonment for this crime, if

4   certain conditions are met, then that ten-year mandatory

5   minimum does not apply, it will go away, and I will be able to

6   sentence you below the ten years.  To determine whether you

7   qualify, I will be asking you and your lawyer and the

8   government a few questions.  I'm not asking them now, but the

9   questions that I will ask are, first of all, have you ever been

10  convicted of a crime before.  Because you have to be in the

11  lowest criminal history category.  Second, did you use violence

12  or credible threats of violence or possess a firearm or

13  dangerous weapon in connection with this offense.  Third, did

14  the offense result in death or serious bodily injury to any

15  person.  And, fourth, were an organizer, leader, manager, or

16  supervisor of others in connection with this offense.  If the

17  answers to each of those questions is no and if you truthfully

18  provided the government with all information and evidence you

19  have concerning the offense, then the safety valve provision

20  will apply.  However, I will not make a decision regarding

21  whether you qualify for the safety valve provision until the

22  time of sentencing.  Do you understand that?

23              THE DEFENDANT:  Yes, I understand.

24              THE COURT:  All right.  I also want to explain that if

25  your attorney or anyone has attempted to promise you or predict

1  what your sentence will be, I just want to make it clear that I

2  am the one who is going to determine your sentence.  So no one

3  else can promise you what your sentence will be.  I'm going to

4  wait until I receive the documents I mentioned and determine an

5  appropriate sentence for you.  And even if your sentence is

6  different from what you expected or what anyone has told you, I

7  will still be bound by your guilty plea and will not be allowed

8  to withdraw your plea.  Do you understand that?

9       THE DEFENDANT:  Yes, I understand.

10      THE COURT:  Has anyone threatened you or forced you to

11 plead guilty?

12      THE DEFENDANT:  No.

13      THE COURT:  And did you sign a plea agreement or agree

14 to a plea agreement with the government?

15      THE DEFENDANT:  Yes.

16      THE COURT:  All right.  I have a copy of a translated

17 plea agreement that appears to have a signature on it.

18 Mr. Epstein, if you could just make a representation as to what

19 that is.  Is that translated into Russian, or what is that?

20      MR. EPSTEIN:  Yes.  Your Honor, to make things go

21 smoothly and for the purposes of the record so that it's clear

22 that Mr. Niftalijev has agreed to an agreement that -- in the

23 English language, which he does not speak, we asked an official

24 court interpreter to translate that document into Russian and

25 mailed it to him for his signature.  He then sent it back to

1    us, signed.  I've spoken to him about it.  And I understand

2    that he agrees to its terms.

3         I have also been given consent, signed his name to the

4    English-language version, which I understand has been

5    transmitted to Mr. Hampton.  So we have an English-language

6    version, a Russian-language version, or exact translation

7    actually, and both documents have been signed, the Russian

8    signed by Mr. Niftalijev himself and the English signed by me

9    with his permission.

10        THE COURT:  OK.  Thank you for that.

11        Mr. Niftalijev, I'd like to confirm what Mr. Epstein

12   just said.  Did you in fact receive a translated version of the

13   plea agreement and sign that version?

14        THE DEFENDANT:  Yes.  I received the Russian

15   translation.  I read through it.  I signed it.  And I sent it

16   back.

17        THE COURT:  Thank you.

18        Do you understand everything in the plea agreement?

19        THE DEFENDANT:  Yes, I understood everything.

20        THE COURT:  OK.  Under the plea agreement, there is

21   what's called a stipulated guideline range.  That's an

22   agreed-upon range of what the sentencing guidelines are in this

23   case.  And the sentencing guidelines are not mandatory.

24   They're advisory.  The stipulated or agreed-upon guideline

25   range is 135 months to 168 months' imprisonment, with a

1  ten-year mandatory minimum if the safety valve provision does

2  not apply.  And there is a guideline fine range of $35,000 to

3  $10 million as a fine.  That stipulation is binding on the

4  government and you but not on me.  And I must make my own

5  calculation of the sentencing guidelines.  But I want to make

6  clear that your lawyer will be able to argue for a sentence

7  that is below that guideline range.  But I want to make sure

8  that you understand that you are giving up your right to appeal

9  or challenge your sentence as long as I sentence you within or

10  below that guideline range.  Do you understand that?

11        THE DEFENDANT:  Yes.  I understand.

12        THE COURT:  And do you still wish to plead guilty?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Would you please tell me what you did that

15  makes you believe you are guilty of this charge.

16        THE DEFENDANT:  So in 2018, I entered a criminal

17  conspiracy in Estonia and other European countries.  And the

18  aim, the goal of the conspiracy, was to acquire fentanyl.  And

19  the ultimate goal of the conspiracy was to hand over the

20  fentanyl to a person who allegedly stated that he could

21  transport it to the United States.  So this is a brief summary.

22        THE COURT:  OK.  When you entered that conspiracy, did

23  you understand that it was illegal and wrong?

24        THE DEFENDANT:  Yes.  I understood it.

25        THE COURT:  And does government counsel believe that

KAQANIFPps

1    there is a sufficient factual basis for the plea?

2            MR. TURNER:  Your Honor, we would respectfully ask

3    just one follow-up regarding quantity, which is that the

4    defendant understood and agreed that the conspiracy, the aim of

5    the conspiracy, involved at least 400 grams of mixtures and

6    substances containing fentanyl or at least 100 grams of

7    mixtures and substances containing carfentanyl.

8            THE COURT:  Mr. Niftalijev, was it your understanding,

9    when you entered the conspiracy, or at some point when the

10   conspiracy existed and you were involved with it, is it your

11   understanding that it involved at least 400 grams of fentanyl

12   and at least 100 grams, or at least 100 grams of carfentanyl?

13           THE DEFENDANT:  Yes, I understood it.

14           THE COURT:  All right.  Mr. Turner, do you think

15   there's any additional questioning that should be made?

16           MR. TURNER:  No, your Honor.  I believe there is a

17   factual basis.  And the government would proffer, just for

18   venue purposes, that the defendant was first brought to the

19   United States following his arrest and that venue is therefore

20   proper under 18 U.S.C. 3238.

21           THE COURT:  All right.  And Mr. Epstein, you also

22   agree that there is a sufficient factual basis for the guilty

23   plea?

24           MR. EPSTEIN:  Yes, I do, your Honor.

25           THE COURT:  And you don't have any reason that I

1    should not accept your client's plea?

2           MR. EPSTEIN:  There is no reason not to accept his

3    plea, no, your Honor.

4           THE COURT:  Thank you.

5           Mr. Niftalijev, since you acknowledge that you are in

6    fact guilty of this charge, and since I am satisfied that you

7    know your rights, including your right to go to trial, and that

8    you are aware of the consequences of your plea, including the

9    sentence that may be imposed, I find you are voluntarily

10   pleading guilty and I hereby accept your guilty plea and enter

11   a judgment of guilty on Count One, to which you have pleaded

12   guilty.

13          Now I'd like to set a date for sentencing.

14          MR. EPSTEIN:  Your Honor, may I be heard just briefly?

15          THE COURT:  Sure.

16          MR. EPSTEIN:  I am prepared to waive as much time as I

17   can, and I guess the way to do that is to waive two disclosures

18   on the probation report and also not to ask for any additional

19   time, other than the filing of the probation report, to file my

20   presentence submission.  I believe the Court has heard a lot

21   about this case over the last year and I intend to keep my

22   submissions fairly brief and just incorporate by reference a

23   lot of what I have done in connection with, for example, the

24   severance motion and other submissions that we have made.

25          So the shortest possible schedule is one that we would

1  favor and ask the Court to direct, understanding of course that

2  probation has their own strictures and their own calendar, but

3  to the extent that they can comply, we would be very willing to

4  go forward with sentencing as quickly as possible.

5          THE COURT:  OK.  Mr. Turner, did you want to be heard

6  on that?

7          MR. TURNER:  Judge, we have no objection to the

8  request from Mr. Epstein, subject to probation's schedule.  But

9  we don't have any objection to a sentencing date that is as

10 early as probation can accommodate.

11         THE COURT:  All right.  Is there anyone from probation

12 on the call?

13         MR. TURNER:  I don't believe so, Judge.

14         THE COURT:  OK.  Well, we could try to do -- what do

15 you think?  Six weeks, Mr. Epstein?  Or do you want to be more

16 ambitious than that?

17         MR. EPSTEIN:  I'd love to be more ambitious than that,

18 your Honor.  But I understand, sometimes these things tend to

19 expand, but I'd love to be more ambitious than that and hope

20 that probation can meet it deadline.  After all, they have

21 written a couple of probation reports already on defendants who

22 have already pled guilty, and I think we can stand ready to do

23 an interview tomorrow if necessary, but of course I don't think

24 they'll do it tomorrow, but as quickly as possible.  So as

25 ambitious as we can be, Judge, I would appreciate.

KAQANIFPps

1          THE COURT:  OK.

2          MR. TURNER:  And, your Honor --

3          THE COURT:  Yes.

4          MR. TURNER:  Sorry, Judge.  Just as a point of

5  reference to the extent helpful, and I certainly don't want to

6  speak for probation, but I do know that with one of the other

7  defendants, as the Court will recall, Mr. Litvintsuk, he pled

8  guilty -- I'm looking at the docket -- he pled guilty on July

9  20th and made a similar request, where the second disclosure

10  was made, and that sentencing was scheduled with probation's

11  input for September 18th.  So it was a little shy of two

12  months, was what happened in that instance.

13          THE COURT:  OK.

14          MR. EPSTEIN:  So I guess six weeks is the best I can

15  do.

16          THE COURT:  Well, it depends.  You're right.  I know a

17  lot about the case and also that probation has prepared

18  presentence reports with respect to some of the co-defendants.

19  So we could try to do four weeks.  And if we need to move it,

20  you know, a week or two, we could do that.

21          MR. EPSTEIN:  That would be great.  That would be just

22  great, your Honor.  Thank you.

23          THE COURT:  Four weeks is tough because that's the

24  week of Thanksgiving and -- well, let's try to do that.  I'm

25  not sure about travel plans at this point, but let's try to

1    do -- if we did four weeks from today, it would be November

2    23rd.

3            Bruce, are we limited to certain times, assuming we do

4    this again remotely?

5            THE CLERK:  Yes.  If we do it remotely we're going to

6    be restricted to a Monday, Wednesday, or Friday, since

7    defendant is being held at the MCC.

8            THE COURT:  And are there certain times we have to

9    specify?

10           THE CLERK:  Not particularly.  I think for

11   videoconferences there are two during the morning hours, and

12   for telephone conferences there are three during the morning

13   hours.  The afternoons are off, so it would just be the morning

14   for either a telephone call or a video call.  I think the last

15   video call and telephone call actually happened at noon, so

16   that's technically the afternoon but not too much into it.

17           THE COURT:  Well, we could try the same time.  We

18   tried 9 a.m. on the 23rd, which is four weeks from today.

19   Would that work, Mr. Epstein?

20           MR. EPSTEIN:  Yes, it does.

21           THE COURT:  And is that OK, Mr. Turner?

22           MR. TURNER:  Yes, your Honor.

23           THE COURT:  All right.  So we'll put it down for

24   November 23rd for sentencing at 9 o'clock a.m.  And that will

25   be the hope.  And I'll ask Mr. Hampton to talk to probation and

1   see if they can be as quick as possible with the presentence

2   report.  If that needs to be moved, of course, I'll let you all

3   know.  And do you know if, Mr. Epstein, I don't know if you've

4   had a chance to talk to your client about this, but do you know

5   whether you're going to request a phone or a video for the

6   sentencing?

7         MR. TURNER:  Your Honor, whatever comes easiest.  I

8   think phone probably is easier.  In my experience there's more

9   room for error in videoconferences and sometimes they wind up

10   being phone conferences anyway.  So we're fine with a phone

11   conference.

12         THE COURT:  OK.  As long as you have a chance to talk

13   to Mr. Niftalijev about that.  And then we'll put it on the

14   record when we talk about sentencing.

15         MR. EPSTEIN:  Absolutely.

16         THE COURT:  The other thing is, ordinarily of course

17   there's a right to see a draft of a presentence report and then

18   make comments and then have a final version prepared by

19   probation, and that whole process takes at least three months

20   typically, but you do have the right, in order to get your

21   request granted, to have it sooner, to waive the review of the

22   draft.

23         MR. EPSTEIN:  And I do.

24         THE COURT:  OK.  And your understanding is your client

25   would waive that as well?

KAQANIFPps

1          MR. EPSTEIN:  Yes, sir.

2          THE COURT:  All right.  So sentencing is set for

3    November 23rd at 9 a.m.  You can just give me any sentencing

4    submissions the week before.  Or do you want to do it earlier

5    than that?

6          MR. EPSTEIN:  The week before is fine, your Honor.

7    There's nothing new under the sun here.  So the week before is

8    fine.  If I can get it any earlier I will.  But I don't think

9    I'm going to say a heck of a lot because I've said a heck of a

10   lot already.

11         THE COURT:  All right.  So if you could do it a week

12   before, and then, Mr. Turner, if the government could do it

13   within two or three days after that.  Does that work for the

14   government?

15         MR. TURNER:  Yes, Judge, that works.

16         THE COURT:  Great.  So I'll say defendant's submission

17   due November 16th and the government's due November 19th.

18         MR. EPSTEIN:  That works for us, Judge.

19         THE COURT:  OK, great.  And if you try to get that

20   interview with probation done in the next day or two, that

21   would be great if that's possible, Mr. Epstein.

22         MR. EPSTEIN:  Yes.  If Mr. Hampton would help me with

23   the contact number I would be more than happy to try to set it

24   up and implore them to do it.

25         THE COURT:  OK.  Great.

KAQANIFPps

1          All right.  Is there anything further from the

2   government?

3          MR. TURNER:  No, your Honor.

4          THE COURT:  Anything further from Mr. Epstein?

5          MR. EPSTEIN:  No, your Honor.  Thank you very much.

6          THE COURT:  OK.  Thank you all.  We're adjourned.

7          (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25