# EPSTEIN SACKS PLLC
ATTORNEYS AT LAW
100 LAFAYETTE STREET
SUITE 502
NEW YORK, N.Y. 10013

BENNETT M. EPSTEIN: (917) 653-7116
SARAH M. SACKS: (917) 566-6196

November 23, 2020

Hon. J. Paul Oetken
United States District Judge
Southern District of New York
US Courthouse
40 Foley Square
New York, NY 10007

**Filed on ECF**

Re: *United States v. Nikolai Niftalijev*
18 Cr. 678 (JPO)

Dear Judge Oetken:

    We write on behalf of our client, Mr. Niftaliijev, in brief reply to the Government's sentencing memorandum.

    First, the language the Government chooses to cherry pick and quote – phrases translated into English such as "cooking" and "laboratory" – from the transcript of the February 2018 meeting with the CS at a Warsaw restaurant (where the defendants' natural BS quotient was enhanced even more by their elevated blood alcohol level), shows merely a feigned (not actual) competence in producing fentanyl in response to a promise of millions of euros. During the sentencing of Mr. Veronjuk, the Court pressed the Government on this point, to which the Government effectively admitted the defendant's lack of expertise or access to any drug lab:

> THE COURT: I have to ask you, how am I to deal with the fact, which I assume you acknowledge, that it is not like they had some ready lab or some ready source of the carfentanil and fentanyl. They went on the dark web, apparently, and ordered it from China, and it took repeated efforts going to the post office with different names

> before they got one that wasn't a scam. That does suggest something a bit amateurish, doesn't it?
>
> MS. CROWLEY: Your Honor, I think what it reflects is the nature of drug trafficking these days in that it's very easy, unfortunately, to get these substances on the dark web. And that is what these defendants did, and that is what law enforcement is trying to deal with these days. The fact that the defendants apparently attempted to procure samples and they were defrauded, that's all based on -- we don't have any knowledge of that. That's based on the defendant's representations. But, the government never suggested that we are aware of a lab that these defendants set up.

(Veronjuk Sent. Tr. at 18.)

We also write to address some things contained in the Government's sentencing memorandum that affect "the need to avoid unwarranted sentencing disparities" and the practical ramifications of possible sentences the Court might decide to impose in that regard.

The Government states that it "views the defendant [Niftalijev] as somewhat more culpable than Litvintsuk – who, unlike the defendant, was not an experienced drug dealer and acted in large part as a translator for his co-conspirators – and somewhat less culpable than Veronjuk, who outranked Niftalijev in the conspiracy and gave him instructions." (Gov't Mem. at 7.) With respect to Mr. Litvintsuk, this seems to be at odds with what the Government had to say in their sentencing memorandum in his case:

> In March 2018, Voronjuk, a friend of [Litvintsuk], brought [him] into the operation. The crew's leader, Magerramov, subsequently tasked [Litvintsuk] -- a sophisticated online operator with a prior conviction for fraud and hacking in Germany—to obtain fentanyl over the Internet. (See July 22, 2020 Plea Tr. ("Plea Tr.") at 14; Def. Sentencing Ltr., dated Sept. 13, 2020 ("Def. Mem.")). [Litvintsuk] found a China-based supplier, and ordered carfentanil through the supplier's website.

(Litvintsuk Plea Tr. at 14; Gov't Litvintsuk Sent. Mem. (Docket No. 102) at 2-3.)

It would also seem to forget that Mr. Veronjuk had touted Mr. Litvinsuk's talents even earlier. In February 2018, at the Warsaw meeting, when the others expressed doubts to each other in Russian about being able to obtain the goods, Veronjuk assured them that a hacker, apparently already known to him, could "solve everything." (Docket No. 81 at 3.)

The Government's sentencing memorandum in our case also states that "the defendant [Niftalijev] requests a sentence of time served (about 26 months)" and appears to suggest that somehow such a sentence would not be in line with his relative culpability in comparison to what his co-defendants have received. (Gov't Mem. at 5-6.) ("To date, the Court has sentenced three of the four other defendants in this case: Bokov and Voronjuk each received a sentence of 33 months'

imprisonment, and Litvintsuk received a sentence of time served, amounting to approximately 24 months' imprisonment.")  We attach hereto a document that shows the Bureau of Prison's "good time" calculation, published on the Federal Defenders' website, which may help clarify what a sentence of "time served" would in fact mean in terms of months if such sentence was imposed.  Mr. Niftalijev, who was formerly arrested in Tallinn upon his leaving the hospital at the beginning of September 2018, has served almost 27 months in total, to date.  As the BOP table indicates, this equates to a sentence of 31 months when "good time" is figured in.  That is not significantly less than the 33-month sentence for Mr. Veronjuk, who may be fairly described as the "street boss" of the so-called operation, and who, if he was not responsible for Mr. Niftalijev's death, then surely left him to die.  The Government may suggest that Veronjuk's (at the very least) complicit participation in Mr. Niftalijev's attempted murder and the extreme suffering Mr. Niftalijev experienced as a result "does not meaningfully mitigate" Mr. Niftalijev's punishment in this case, but clearly they must admit that Mr. Niftalijev's sentence should be substantially less than the 33 months Mr. Veronjuk received, given that he "outranked Mr. Niftalijev in the conspiracy and gave him instructions." (*Id*. at 7.)

In order to inform the Court as to the potential adverse difference in terms of sentence calculation between a sentence of "time served," which we request, and any sentence quoted in months with respect to a defendant who was detained in another country awaiting extradition, we emailed Deputy Regional Counsel Adam Johnson of the Bureau of Prisons Northeast Regional Office in Philadelphia to pose the question.  Mr. Johnson has given us permission to quote him as follows:

> It is hard to determine how long it would take to compute a sentence of a definitive time.  First, BOP has no way to gauge the time it takes for the Court to route the Judgment to the USPO and USMS, who then must upload it to their database and subsequently route it and other documentation to the BOP requesting a sentence computation and designation of the inmate.  Once BOP receives it, it can take between 1-2 weeks (and occasionally longer) to calculate the sentence, particularly where foreign jail credit is involved.

It might also be useful for the Court to know that according to Mr. Litvintsuk's counsel, Mr. Litvintsuk, who was sentenced to "time served" on September 9, 2020, remains languishing in immigration custody as of this writing.

Very truly yours,

*Bennett M. Epstein*

Bennett M. Epstein

3